UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

SAMER ALI-HASAN, M.D.

                Plaintiff,

        v.                                      Civil Action No. 1:19-cv-01589
                                                                   (GTS-DJS)

ST. PETER'S HEALTH PARTNERS MEDICAL
ASSOCIATES, P.C., and ST. PETER'S HEALTH
PARTNERS

                Defendants.

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

                                                               BOND, SCHOENECK & KING, PLLC
                                                               *Attorneys for Defendants*
                                                                One Lincoln Center
                                                                Syracuse, New York 13202
                                                                Telephone:  (315) 218-8000
                                                                Facsimile:  (315) 218-8100

Of Counsel:

Adam P. Mastroleo, Esq.
Hannah K. Redmond, Esq.

13624114.2

# **TABLE OF CONTENTS**

**Page**

ARGUMENT ..................................................................................................................... 1

POINT I ............................................................................................................................. 1

PLAINTIFF'S GENDER DISCRIMINATION CLAIM MUST BE DISMISSED ................... 1

    A.    Plaintiff Has Failed to Submit Any Evidence to Support His Claim that Gender was a Motivating Factor in the Decision to Terminate His Contract ........................................................................................................ 1

    B.    Plaintiff was Terminated for Legitimate, Non-Discriminatory Reasons and Cannot Establish that SPHPMA's Stated Basis for Termination was a Pretext for Discrimination ................................................................. 9

POINT II .......................................................................................................................... 12

PLAINTIFF'S BREACH OF CONTRACT CLAIM MUST BE DISMISSED ..................... 12

    A.    SPHPMA Properly Terminated Plaintiff's Contract Using the "Termination for Convenience" Provision ................................................... 12

    B.    The SPHPMA Bylaws and Code of Conduct were Not Generally Incorporated into the Agreement ............................................................... 14

CONCLUSION ................................................................................................................ 15

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Comerford v. Village of N. Syracuse*,
    2021 WL 950974 (N.D.N.Y. March 12, 2021) ....................................................... 8, 9

*Delaney v. Bank of Am. Corp.*,
    766 F.3d 163 (2d Cir. 2014) ..................................................................................... 11

*Dister v. Cont'l Group, Inc.*,
    859 F.2d 1108 (2d Cir. 1988) ................................................................................... 11

*Doe v. Hobart and William Smith Colleges*,
    No. 6:20-cv-06338 EAW, 2021 WL 2603400 (W.D.N.Y. June 25, 2021) .................. 2

*Doe v. New York University*,
    438 F. Supp. 3d 172 (S.D.N.Y. Feb. 5, 2020) .................................................... 2, 4, 7

*Kaufman v. Columbia Mem'l Hosp.*,
    2 F. Supp. 3d 265 (N.D.N.Y. 2014) .......................................................................... 15

*Kimball v. Vill. Of Painted Post*,
    737 Fed. App'x 564 (2d Cir. 2018) ............................................................................ 1

*MacManus v. Chattanooga-Hamilton Cty. Hosp. Auth.*,
    No. 1:08-CV-96, 2008 WL 2115733 (E.D. Tenn. May 19, 2008) ............................ 15

*Marquez v. Hoffman*,
    2021 WL 1226981 (S.D.N.Y. April 2, 2021) ............................................................. 9

*Menaker v. Hofstra University*,
    935 F.3d 20 (2d Cir. 2019) ............................................................................. *passim*

*Miller v. Mercuria Energy Trading, Inc.*,
    291 F. Supp. 3d 509 (S.D.N.Y. 2018), *aff'd*, 774 F. App'x 714 (2d Cir. 2019) ........................................................................................................................ 15

*Ne. Georgia Radiological Assocs., P. C. v. Tidwell*,
    670 F.2d 507 (5th Cir. 1982) ................................................................................... 15

*Roe v. St. John's University*,
    2021 WL 1224895 (E.D.N.Y. Mar. 31, 2021) ........................................................... 4

*Zenie v. Coll. of Mount Saint Vincent*,
    No. 20-3535-CV, 2021 WL 6105373 (2d Cir. Dec. 21, 2021) .................................. 11

# ARGUMENT

# POINT I

# PLAINTIFF'S GENDER DISCRIMINATION CLAIM MUST BE DISMISSED

**A.  Plaintiff Has Failed to Submit Any Evidence to Support His Claim that Gender was a Motivating Factor in the Decision to Terminate His Contract**

To succeed on his gender discrimination claim, Plaintiff must first demonstrate that his contract was terminated under circumstances giving rise to an inference of discrimination. *See, e.g. Kimball v. Vill. Of Painted Post*, 737 Fed. App'x 564, 570 (2d Cir. 2018). In his opposition, Plaintiff attempts to establish this inference by relying entirely on the Second Circuit decision in *Menaker v. Hofstra University*, 935 F.3d 20 (2d Cir. 2019), and Defendants' allegedly defective investigation into an anonymous allegation that Plaintiff was difficult to work with and abusive to staff. As discussed in Defendants' original memorandum of law, and below, Plaintiff has failed to point to any facts that would support an inference of discrimination and his discrimination claim must be dismissed on this basis alone.

As an initial matter, Plaintiff's reliance on *Menaker* is entirely misplaced. The *Menaker* court very clearly stated that an inference of discrimination could be drawn:

> where a university (1) takes an adverse action against a student or employee, (2) in response to allegations of sexual misconduct, (3) following a clearly irregular investigative or adjudicative process, (4) amid criticism for reacting inadequately to allegations of sexual misconduct by members of one sex . . .

*Id.* at 33.

Because Plaintiff cannot satisfy these required elements, the *Menaker* decision, and the principles articulated in *Menaker*, are not applicable in this case.

1

1. <u>Plaintiff's contract was not terminated "in response to allegations of sexual misconduct."</u>

Plaintiff has not even alleged that his contract was terminated "in response to allegations of sexual misconduct." *Id.* This fact alone is enough to distinguish *Menaker*. Recognizing this flaw, Plaintiff argues that allegations of sexual harassment are not necessary for *Menaker* to apply. (Plaintiff's Memo of Law, p. 13). However, it is clear from the *Menaker* decision itself, and the cases interpreting *Menaker*, that allegations of sexual misconduct *are* necessary to support an inference of discrimination in this specific circumstance.

As an initial matter, the *Menaker* case involved an allegation of sexual harassment and the Second Circuit specifically referenced sexual harassment when articulating the standard above. *Id.* Similarly, cases interpreting *Menaker* have also involved allegations of sexual misconduct. *See*, *e.g.*, *Doe v. New York University*, 438 F. Supp. 3d 172 (S.D.N.Y. Feb. 5, 2020); *Doe v. Hobart and William Smith Colleges*, No. 6:20-cv-06338 EAW, 2021 WL 2603400 (W.D.N.Y. June 25, 2021). Here, there was never any allegation that Plaintiff engaged in sexual misconduct or harassment and, as such, the principle articulated in *Menaker* does not apply in this case.

However, even if Plaintiff were correct that *Menaker* applies in the absence of an allegation of sexual misconduct, the facts of this case would still not satisfy the second *Menaker* element. Indeed, the anonymous complaint made about Plaintiff that triggered SPHPMA's investigation (the "Compliance Complaint") was that he demeaned and demoralized employees. It was plainly *not* a complaint about sexual harassment or gender discrimination and did not contain *any* gender component. *See* <u>Bauer Dec.</u> (Dkt. 50-7), Ex. A, pp. 3 – 4. The investigation was not an investigation into a sexual

13624114.2

harassment or gender discrimination claim. Rather, it was an investigation into a complaint that a physician was abusive toward staff and colleagues.

Plaintiff argues that because several employees stated a belief that Plaintiff did not like to work with, and was degrading to, female staff (during an unrelated investigation conducted before the Compliance Complaint was made), that the Compliance Complaint was somehow converted into a gender discrimination claim that would make the *Menaker* decision applicable. *See* Bauer Dec., Ex. D. Strangely, Plaintiff is actively trying to argue that he was accused of and investigated for gender discrimination. In spite of Plaintiff's efforts, this Court should not infer something that is not there.

SPHPMA's investigation revealed that Plaintiff treated both men *and* women poorly. Craig Knack, for example, stated to the SPHPMA investigator that Plaintiff had acted inappropriately toward him and invaded his personal space, and that Plaintiff would become extremely intimidating when he did not get his way. *Id.*, Ex. C, pp. 1 – 2. Similarly, Dr. Constantino stated that Plaintiff had a tendency to yell at, and become impatient with, non-physician staff members. *Id.*, pp. 2 – 3. Robert Rivera also described personal conflict he had with Plaintiff. *Id.*, Ex. D, p. 1. Moreover, the July 22, 2019 SPHPMA Executive Meeting Minutes, which discuss the termination of Plaintiff's contract, state, "Anonymous complaint from an employee at SPH regarding inappropriate behavior and invading personal space." Baier Dec. (Dkt. 50-5), Ex. B, p. 3. The minutes do not state, or even imply, that the Compliance Complaint against Plaintiff was gender-based or that gender was implicated in the investigation.

As a result, even if an allegation of sexual misconduct were not required for *Menaker* to apply, Plaintiff has failed to satisfy the second *Menaker* element.

3

### 2. Plaintiff's contract was not terminated "amid criticism for reacting inadequately to allegations of sexual misconduct by members of one sex."

Perhaps the clearest reason why *Menaker* does not apply to Plaintiff's case is that there is no proof even suggesting that Defendants were subject to any criticisms for reacting inadequately to allegations of sexual misconduct by members of one sex. Plaintiff does not even make such an allegation. This alone establishes that *Menaker* does not apply and that Plaintiff's gender discrimination claim must fail. *See Roe v. St. John's University*, 2021 WL 1224895, *23 (E.D.N.Y. Mar. 31, 2021) ("Having failed to plead that SJU 'follow[ed] a clearly irregular investigative or adjudicative process . . . amid criticism for reacting inadequately to allegations of sexual misconduct by members of one sex,' Plaintiff has failed to establish an inference of discriminatory intent . . .") (citing *Menaker*); *New York University*, 438 F. Supp.3d at 185-86 (holding that plaintiff failed to establish NYU was subject to sufficient public pressure and criticism to warrant an inference of discrimination).

### 3. Plaintiff's contract was not terminated as the result of a "clearly irregular" investigative process.

The sole basis of Plaintiff's claim is that Defendants' investigation into the Compliance Complaint was "clearly irregular." Plaintiff is simply wrong. Although the *Menaker* court did not "define precisely what sort of irregularities" meet the "clearly irregular" standard, it did provide some helpful guidance. 935 F.3d at 34. The court noted that clear irregularities may be found where ". . . the evidence substantially favors one party's version of a disputed matter, but an evaluator forms a conclusion in favor of the other side (without an apparent reason based in the evidence'" or "where decision makers choose 'to accept an unsupported accusatory version over [that of the accused], and

4

declined even to explore the testimony of [the accused's] witnesses.'" *Id.* at 34 (citations omitted).

Importantly, however, the Second Circuit clarified, "we emphasize that our standard requires *clear* irregularities to raise an inference of bias. Variations among employers, even among universities, are expected, and minimal irregularities (absent other indicia of bias) do not suffice to suggest discrimination." *Id.* at 34, n. 50.

Here, there were no "clear irregularities" in SPHPMA's investigation of the Compliance Complaint, and the investigators' conclusions were reasonably based on the evidence. The anonymous complaint that triggered the investigation was received by the SPHP Compliance Hotline on July 12, 2019. Bauer Dec., ¶ 6. Because the Compliance Complaint was received via the Compliance Hotline, the investigation was completed pursuant to the procedures set forth in the SPHP Integrity & Compliance Line and Web-Reporting Program Policy (the "Compliance Line Policy"). *Id.*, Ex. B. Plaintiff does not (and cannot) dispute that the investigation proceeded according to that policy as follows:

- Once the complaint was received, it was immediately forwarded to Human Resources Business Partner Anna Bauer, and others.; Bauer Dec., ¶ 6, Ex. A, Ex. B ("Compliance Line Policy"), p. 3.

- This complaint was assigned a "moderate priority," meaning that the investigation needed to be responded to within two weeks. (Compliance Line Policy, pp. 3 – 4); *Id.*, Ex. A.

- Human Resources promptly commenced an investigation, which included interviewing several witnesses. *Id.* Because the complaint was anonymous, SPHPMA could not interview the complainant or his/her suggested witnesses. As a result, SPHPMA interviewed four witnesses who worked closely with Plaintiff. (Compliance Line Policy, p. 4); *Id.*, Ex. C.

- When interviewed, both Craig Knack and Dr. Constantino identified significant issues with Plaintiff's conduct, including multiple instances of inappropriate and abusive behavior. *Id.*, Ex. C. Ms. Warrender also noted that Plaintiff sometimes clashed with Cath Lab technicians. *Id.* None of

5

- these witnesses made any allegation that Plaintiff treated women differently than men.

- As part of the investigation, Human Resources also considered information gathered from witnesses during an unrelated June 2019 investigation. Of the four witnesses interviewed during that investigation, three provided testimony regarding Plaintiff's poor treatment of staff, including that he was degrading to female staff. (Compliance Line Policy, p. 4); *Id.*, Ex. D.

- Once the investigation was completed, Ms. Bauer provided a summary of the interviews to SPHPMA President Rik Baier as well incoming SPHPMA President Kellie Valenti. *Id.*, ¶ 15.

Plaintiff claims that this investigation was clearly irregular based on alleged deficiencies, which can be summarized as follows:

- Certain individuals were not interviewed, including Plaintiff, two female technicians and Cyrus Ferri, who was the director of one of the catheterization laboratories where Plaintiff performed procedures;

- The investigators improperly considered the witness statements of Craig Knack, Robert Rivera and Dr. Constantino; and

- The investigators never identified who made the anonymous complaint or that the conduct alleged occurred, never found problems with Plaintiff at other work locations, and did not uncover prior complaints about Plaintiff. *See* Plaintiff's Memorandum of Law, pp. 8 – 10.

These alleged deficiencies do not make the investigation "clearly irregular" under the *Menaker* standard. As an initial matter, the identity of the anonymous complainant does not change the fact that the Compliance Complaint was made, or that a majority of the witnesses interviewed corroborated that Plaintiff was difficult to work with and at times abusive to staff. Plaintiff's statement to this court about what evidence *he* thinks the investigators should have taken into consideration is irrelevant. Similarly, Plaintiff's suggestion to the court that the investigators should have ignored testimony from three of the four men who were interviewed simply because their testimony is not favorable to Plaintiff is ridiculous. Finally, with respect to witness interviews, according to the policy,

Human Resources had discretion to choose who would be interviewed. The Compliance Compliant was anonymous, so Human Resources interviewed individuals who worked closely with Plaintiff. As stated by Ms. Bauer, Human Resources exercised its discretion and did not determine that interviewing Plaintiff was necessary.

The investigators reasonably concluded, based upon the information gathered, that Plaintiff was difficult to work with and at times hostile and abusive toward staff and other physicians. Plaintiff's disagreement with this conclusion is not relevant. The investigation followed the Compliance Line Policy and was not "clearly irregular." *See New York University*, 438 F. Supp. 3d at 184 (plaintiff's allegations that defendant departed from established investigation procedures by, among other things, failing to interview witnesses, did not establish a "clearly irregular" investigative process).

4. This Court should reject Plaintiff's request to re-write *Menaker*

Although couched as a claim based on *Menaker,* in reality, Plaintiff is asking this Court to create new law. It is clear from Plaintiff's opposition to the present motion that he cannot satisfy the elements set forth in the *Menaker* decision. Rather, Plaintiff is relying exclusively on SPHPMA's investigation of the Compliance Complaint and his claim that it was "clearly irregular," to establish an inference of discrimination. As discussed above, Defendants' investigation was not irregular in any way. But even if it was, Plaintiff points to no other evidence that would support an inference that Defendants were motivated by discriminatory animus when they decided to terminate his contract.

Plaintiff argues in his Memorandum of Law that *Menaker* stands for the proposition that if a male employee is accused of gender discrimination and the male is not interviewed as part of the investigation into that accusation, that alone is sufficient to meet a plaintiff's *prima facie* burden to set forth facts establishing an inference of discrimination.

7

(Plaintiff's Memorandum of Law, p. 14). It is evident that Plaintiff takes this position because he has no evidence, circumstantial or otherwise, to support his claim that his contract was terminated because of his gender.

This is clearly not the law and Plaintiff's argument must be rejected. Indeed, the *Menaker* court acknowledged that more than a "clearly irregular" investigative process would be needed to create an inference of discrimination in the narrow factual circumstance discussed in the decision. The court made this proclamation in its recitation of the elements cited above, and it also stated that it "recogiz[ed] that a clearly irregular investigative or adjudicated process may (**when combined with other factors**) create a plausible inference of sex discrimination." 935 F.3d at 34, n.50. (emphasis added) In other words, it is clear from the *Menaker* decision itself that pointing to an allegedly irregular investigation, without more, is not enough to establish an inference of discrimination.

Plaintiff's proposal must also be rejected because it would produce extreme and ridiculous results. Under Plaintiff's analysis, *any* employee could state a *prima facie* case of discrimination if they are accused of gender discrimination and not interviewed as part of their employer's investigation. This is not the law and this court should not make it so.

Plaintiff primarily cites to two cases to support this argument, neither of which is helpful to his claim. First, Plaintiff cites to *Comerford v. Village of N. Syracuse*, 2021 WL 950974, *19 (N.D.N.Y. March 12, 2021). However, in that case the plaintiff did not rely exclusively on an irregular investigation to establish an inference of discrimination. Rather, the plaintiff cited to several facts to establish the inference, including (1) procedural irregularities in the demotion process, including the failure to provide

plaintiff with a statutorily required hearing; (2) a culture of bias against women that was evidenced by disparaging remarks made about women by the plaintiff's supervisors, and (3) the fact that plaintiff was replaced by male officers.  *Id.*  *Comerford* is therefore clearly distinguishable and does not support Plaintiff's argument.

Plaintiff also cites to *Marquez v. Hoffman*, 2021 WL 1226981 (S.D.N.Y. April 2, 2021), which is equally inapposite.  In fact, in discussing whether the plaintiff had sufficiently stated a claim by alleging facts that give rise to a plausible inference of discrimination, the court stated, "A 'clearly irregular investigative adjudicative process' can also serve as evidence of discriminatory intent **when combined with other factors**." *Id.* at 14 (citing *Menaker*, 935 F.3d at 34, and *Doe v. Columbia*, 831 F.3d 46, 56 – 58 (2d Cir. 2016)) (emphasis added).

Accordingly, this Court should not accept Plaintiff's attempt to change the law, and should dismiss Plaintiff's gender discrimination claim in its entirety.

B. **Plaintiff was Terminated for Legitimate, Non-Discriminatory Reasons and Cannot Establish that SPHPMA's Stated Basis for Termination was a Pretext for Discrimination**

Faced with the fact that there is no evidence that gender played any role in SPHPMA's decision to terminate his contract, Plaintiff attempts to argue that SPHPMA's stated reasons for terminating his contract were pretextual.  However, Plaintiff offers nothing more than his own, unverified speculation.  Indeed, Plaintiff cannot dispute, or would have no reason to know, the following:

- Several physicians at Albany Associates in Cardiology ("AAC") did not want him to be made partner due to concerns regarding his clinical competence. Filippone Dec. (Dkt. 50-6), ¶ 11.

- Concerns were repeatedly raised throughout Plaintiff's time with AAC regarding Plaintiff's interventional skills by AAC physicians Jorge Constantino, M.D., Alain Vaval, M.D., Eric Roccario, M.C., Gregory Bishop,

9

- M.D., and Robert Phang, M.D.  Filippone Dec., ¶¶ 15 – 16; Baier Dec., ¶¶ 18 – 19.

- One of Plaintiff's cases was so concerning that it was brought before a meeting of the senior partners of AAC, where Plaintiff was not present.  *Id.*

- Given the recurrent concerns regarding Plaintiff's skills, several of Plaintiff's non-interventional colleagues at AAC would not refer their patients to see him.  Filippone Dec., ¶ 21, Constantino Depo. (Dkt. 50-1, Ex. D), pp. 17 – 18.

- Defendants realized in May 2019 that Plaintiff was not board certified in interventional cardiology.  Filippone Dec., ¶ 24.

- On June 24, 2019 (before the Compliance Complaint was made about Plaintiff), SPHPMA President Rik Baier presented to the SPHPMA Executive Board that the AAC Joint Operating Committee wanted to terminate Plaintiff's contract using the "no cause" termination provision because he was not board certified in interventional cardiology.  Baier Dec., ¶ 23; Ex. B; Kowal Dec. (Dkt. 50-8), ¶¶ 7 – 8.

- On July 12, 2019, the Compliance Complaint was received.  It did not allege, or even imply, that Plaintiff was engaged in gender discrimination.  Bauer Dec., Ex. A.

- An investigation into this anonymous complaint was commenced, and a majority of witnesses corroborated the claim that Plaintiff was hostile to work with.  Interviews were conducted as discussed above.  Id., Exs. C, D.

- SPHPMA President Rik Baier had received complaints from AAC staff and physicians regarding Plaintiff's behavior in 2018 and 2019 before the Compliance Complaint was made.  Baier Dec., ¶ 19.

- On July 22, 2019, Mr. Baier presented to the SPHPMA Executive Committee that the AAC Joint Operating Committee wanted to terminate Plaintiff's contract because of: (i) recurrent questions regarding Plaintiff's medical skills, (ii) Plaintiff's lack of board certification in Interventional Cardiology, and (iii) the general consensus that Plaintiff was unpleasant and difficult to work with.  *Id.*, ¶ 35, Ex. A; Kowal Dec., ¶¶ 9 – 10.

In opposition to Defendants' motion, Plaintiff tries to argue that he was a good doctor and did not have issues with medical judgment or performance.  Plaintiff also tries to claim that it was no secret he was not board certified, and that he was not difficult to

10

work with.  As demonstrated by the overwhelming evidence, Plaintiff's claims are factually incorrect.

However, even if they were correct, Plaintiff cannot demonstrate that SPHPMA's reasons for terminating his contract were pretextual.  Indeed, it cannot be disputed that the SPHPMA Executive Committee, and SPHPMA President Rik Baier, legitimately believed that Plaintiff had significant issues with medical judgment and performance, based on repeated reports from Plaintiff's own colleagues.  Mr. Baier also reasonably believed that Plaintiff was difficult to work with and at times abusive to staff, and that his lack of board certification was a significant issue, significant enough to recommend terminating his contract.  Mr. Baier also legitimately thought, before the Compliance Complaint was made, that the AAC Joint Operating Committee wanted to terminate Plaintiff's contract.  Plaintiff cannot dispute any of this.

It is well-established that the courts do not sit as "super personnel departments." *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 169 (2d Cir. 2014) ("we do not sit as a super-personnel department that reexamines an entity's business decisions." (citations and quotations omitted); *Zenie v. Coll. of Mount Saint Vincent*, No. 20-3535-CV, 2021 WL 6105373, at *1 (2d Cir. Dec. 21, 2021) (same). The law does not make illegal even a personnel decision which turns out to be inaccurate.  *See Dister v. Cont'l Group, Inc.,* 859 F.2d 1108, 1116 (2d Cir. 1988) (holding that the fact that a court finds that an employer misjudged a situation is not sufficient to prove that the employer was acting discriminatorily) (citing *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248 (1981)). As a result, even if Mr. Baier and the SPHPMA Executive Committee were wrong

(which they were not), Plaintiff's gender discrimination claim fails and should be dismissed.

## POINT II

**PLAINTIFF'S BREACH OF CONTRACT CLAIM MUST BE DISMISSED**

**A. SPHPMA Properly Terminated Plaintiff's Contract Using the "Termination for Convenience" Provision**

In his opposition, Plaintiff claims that SPHPMA did not properly terminate his contract under the Agreement's "Termination for Convenience" provision, for two reasons. First, he claims that SPHPMA did not give him the required notice under that provision. Second, he claims that SPHPMA could not utilize the Termination for Convenience provision if it had a reason to terminate Plaintiff's contract. Both arguments fail.

As an initial matter, by its clear terms, the Termination for Convenience provision allowed either party to terminate the Agreement, and thus the employment relationship, "for any or no reason" after one year "on at least 180 days' prior written notice." Baier Dec., Ex. A, at p. 7. Plaintiff cannot dispute that on July 31, 2019, he was provided a letter explaining that his employment would be terminated effective January 27, 2020 (which is 180 days after July 31, 2019). Bauer Dec., Ex. E. Plaintiff also cannot dispute that he continued to receive his full benefits and pay through January 27, 2020. Ali-Hasan Depo., at pp. 40, 112-13 (Dkt. 50-1, Ex. B). As such, SPHPMA provided him with the full 180 days' written notice required by the Agreement.

Plaintiff's "notice" objection appears to be that he was not allowed to continue working during the 180-day period. However, there is nothing in the contract that required SPHPMA to allow Plaintiff to continue working. SPHPMA notified Plaintiff that his contract would be terminated in 180 days and continued paying him throughout the 180-day

12

period. As such, SPHPMA complied with the terms of the Agreement, and Plaintiff's claim regarding SPHPMA's failure to provide him with the required notice is without merit.

Plaintiff also misinterprets the appropriate circumstances under which the Termination for Convenience provision could be used. Plaintiff argues in his Memorandum of Law that if SPHPMA had a reason to terminate the Agreement such as Plaintiff's poor work or bad behavior, it could not utilize this provision and could only terminate the Agreement "for cause." Plaintiff's argument fails for several reasons. First, it is refuted by the Agreement's clear and unequivocal terms. Indeed, the Termination for Convenience provision states that it can be utilized, by either party "***for any or no reason***." Baier Dec., Ex. A, at p. 7 (emphasis added). Thus, SPHPMA can utilize this provision if it has *any* reason to terminate the Agreement.

Second, Plaintiff ignores the practical reality that the "Termination for Convenience" and "Termination by Employer" provisions provide two separate, independent mechanisms for effectuating a termination, neither of which "supersedes" or "obliterates" the other. Notably, if either party wanted to exercise the Termination for Convenience option, they would be faced with a penalty – 180 days' notice. In contrast, if SPHPMA wanted to terminate the contract "immediately," it could utilize the "Termination by Employer" subsection and terminate the Agreement "for cause." This subsection provides SPHPMA with grounds to terminate the contract immediately so that it can avoid the Termination for Convenience penalty. If SPHPMA wanted to terminate Plaintiff's contract immediately, it could have done so using this "Termination by Employer" provision, and in that case would follow the terms of that provision.

13

Third, Plaintiff's proposed interpretation would render the Termination for Convenience provision meaningless. Indeed, utilizing Plaintiff's reasoning, if the employer had *any* reason to terminate the Agreement, it could not utilize the Termination for Convenience provision. This is clearly not what the Agreement states. Plaintiff's proposed interpretation offends the fundamental rule of contract interpretation that a contract be construed in such a way that all of its terms are given effect. Indeed, in citing *PNC Cap. Recovery v. Mech. Parking Sys., Inc.*, Plaintiff said it best – "[i]n construing a contract, one of a court's goals is to avoid an interpretation that would leave contractual clauses meaningless." 283 A.D.2d 268, 271 (1st Dep't 2001) (citations and quotations omitted) (collecting cases).

Here, SPHPMA chose to utilize the Termination for Convenience provision. The basis for this decision is well developed above and in the Defendants' original Memorandum of Law. Because SPHPMA utilized that termination provision, it was faced with a penalty – paying Plaintiff for 180 days beyond when it wanted to terminate his contract. SPHPMA complied with this penalty, and clearly complied with the terms of the Agreement.

### B. The SPHPMA Bylaws and Code of Conduct were Not Generally Incorporated into the Agreement

Plaintiff also asserts that the SPHPMA Bylaws and Code of Conduct were generally incorporated into the Physician Employment Agreement (the "Agreement") by reference. Because the Agreement explicitly provides that it is the only contract between the parties, that is plainly not the case. Indeed, the Agreement clearly states that "[t]ermination of this Agreement shall not entitle Physician to the hearing and appeal rights set forth in the medical staff bylaws of any SPHP related organization." Baier Dec., Ex.

14

A, at p. 3. Given this express disclaimer, the Agreement did not generally incorporate the Bylaws by reference and the rights set forth therein were unavailable to Plaintiff.[1]

In addition, even if Plaintiff is correct that the Bylaws and/or Code of Conduct were incorporated into the Agreement by way of the reference in Section IX.B.3(b) to "a policy of either the Employer or SPHP, including, but not limited to, the Code of Conduct," that "incorporation by reference is limited to the section and purpose for which the incorporated document is identified." *Miller v. Mercuria Energy Trading, Inc.*, 291 F. Supp. 3d 509, 518 (S.D.N.Y. 2018), *aff'd*, 774 F. App'x 714 (2d Cir. 2019) (collecting cases). In other words, even if Plaintiff's theory carries any weight (it does not), the Bylaws and Code of Conduct were incorporated only to the extent that SPHPMA chose to terminate Plaintiff's contract under Section IX.B.3(b) of the Agreement. *See id.* Because Plaintiff was not terminated under that subsection, his breach of contract claim suffers the same fate and is legally meritless whether or not the Bylaws and/or Code of Conduct were incorporated by way of this limited reference.

## CONCLUSION

Based upon the foregoing, and for the reasons stated in Defendants' original Memorandum of Law, Defendants ask this Court to grant their motion for summary judgment in its entirety, and dismiss Plaintiff's Complaint.

---

[1] The cases cited by Plaintiff in support of his position that the Bylaws are incorporated by reference are entirely inapposite. Both *Kaufman v. Columbia Mem'l Hosp.*, 2 F. Supp. 3d 265, 281 (N.D.N.Y. 2014), and *Ne. Georgia Radiological Assocs., P. C. v. Tidwell*, 670 F.2d 507, 509 (5th Cir. 1982) are distinguishable on the basis that both cases involved employment agreements exclusively allowing termination "for cause" and expressly incorporating the employers' bylaws. Plaintiff's citation to *MacManus v. Chattanooga-Hamilton Cty. Hosp. Auth.*, No. 1:08-CV-96, 2008 WL 2115733, at *1 (E.D. Tenn. May 19, 2008) is equally misplaced as the question before the court in that case was not whether plaintiff had a viable breach of contract claim based on defendant's bylaws, but whether it had subject matter jurisdiction.

15

16

| | |
|---|---|
| Dated:  February 2, 2022 | BOND, SCHOENECK & KING, PLLC |
| | By: _____ |
| | Adam P. Mastroleo, Esq. |
| | (Bar Roll No. 514408) |
| | Hannah K. Redmond, Esq. |
| | (Bar Roll No. 702036) |
| | Office and P.O. Address |
| | One Lincoln Center |
| | Syracuse, New York  13202-1355 |
| | Telephone:  (315) 218-8000 |
| | Facsimile:  (315) 218-8100 |
| | Email:    amastroleo@bsk.com |
| |              hredmond@bsk.com |
| | *Attorneys for Defendants* |

## CERTIFICATE OF SERVICE

I hereby certify that on February 2, 2022, the foregoing Reply Memorandum of law in Further Support of Defendants' Motion for Summary Judgment was electronically filed with the Clerk of the United States District Court for the Northern District of New York, using the CM/ECF system, which sent notification of such filing to the following:

Phillip G. Steck, Esq.
COOPER ERVING & SAVAGE LLP
39 North Pearl Street
Albany, New York  12207
Email: psteck@coopererving.com

*/s/ Adam P. Mastroleo*

_____
Adam P. Mastroleo, Esq.